Good morning, Richard Rome. How are you? For Ms. Lievanos, fine, thank you. You're not really challenging the substantive reason for the one-year sentence, are you? I would submit on that. That's a good move. It was a gift. I don't think your counsel would have done as well with three quarters of the district judges in our circuit. Sometimes we just like to raise issues that fill up pages on the lower court. Yes. Anyway, we still have a few issues remaining, and I don't know if the court has any preference. I guess I would just start off on top with the Batson issues with respect to the voir dire of the jury and the exclusion of three black jurors that occurred. I find this an interesting case because one of the issues we get into on Batson issues is whether it's appropriate to do a comparative jury analysis. In this case, the prosecution's proffered reasons for excluding these jurors stands up pretty well on comparative analysis. Some of the reasons it gave for striking these jurors, or at least one of them, was used to strike another juror who was not African-American. Correct? That may be true, but I think we have to look at the specific reasons also that were given in this particular with these three jurors. Well, if one reason stands scrutiny, do we have to look at others? I guess it would depend on what the reason was. And one of the jurors that the government struck was a juror that the defense struck and then withdrew their strike. Well, that's true. And is there anything in the world wrong with a prosecutor saying, in that circumstance, I don't want that juror? Well, I think, of course, the defense changed their mind. Apparently, there was a mistake made, and that juror who was struck was then non-struck or re-put back on the panel. And so I don't think the fact that there might have been a strike that was nixed, so to speak, should then somehow justify. It's unusual in jury selection that the prosecution that either side finds out that one side doesn't want a juror or wants a juror. And isn't that reason enough to exercise a peremptory? Well, I don't know that it is. I guess it would depend on ñ not necessarily. I guess we have to look at the ñ I think you have to look at the reasons. For example, one of the reasons given for striking one of the jurors was that they wanted to be a judge. That was one of three reasons given with respect to gains. Obviously, mentally unbalanced. Well, you know, they didn't follow that up. But, you know, so if we look at that, for example, the same thing with respect to that. Well, we do instruct jurors that there's only one judge in the courtroom and that they must follow the law. And, I mean, I don't know. I mean, with regard to a particular juror saying, you know, I want to be a judge, it may make somebody doubt as to whether they follow the instructions. Well, that might be true. That particular judge said that ñ I mean, that particular juror did say that they would follow the burden, be objective, and be fair, so I don't know why the prosecutor used that as one of the reasons. I'm striking this juror because he indicated that he wanted to be a judge. Lack of ñ the same juror, lack of sophistication when she inquired about a subprime loan when we were dealing with the real estate fraud case, that seemed to be a very pertinent inquiry. Is that Loudermilk we're talking about? Well, that was actually the Gaines ñ that was the Gaines juror. But the one about the reversal of the strike? Yes, the reversal of the strike. That's correct. That was Loudermilk. And the judge agreed that the person was arrogant, angry, and not candid. Right. But when we look at the three reasons that were given, arrogant, difficult to understand, whatever that might mean, the transcript was fine, I didn't see any problem with the court reporter being able to determine anything, not disclosing work in the subprime field, I'm not sure there was a direct question asked. I think when we look at ñ No, they had to drag it out of the potential juror. Well, there's sure no reason to volunteer ñ It was almost as if they had to pull it out of his back pocket. Well, I guess in retrospect ñ Then it turns out he worked for a subprime lender, right? Well, he did, but that was something that had been previous in his background. He actually now worked ñ That's how backgrounds work, the previous. Backgrounds are sort of previous. Right, but ñ I mean, the questions we ask jurors normally don't reflect just their immediate situation. We talk about, we ask about past employment and past incidents in their life having to do with this particular kind of party, or if the criminal case past criminal involvement, you know, brushes with the criminal system. That's absolutely correct, Your Honor. And the juror, when asked, did state that she worked in the subprime ñ that he worked in the subprime field. It wasn't anything that was actually hidden. I guess you could say it was pulled out only because it was ñ the question was asked, but that specific question had not been asked. I think when you look at the totality, also with the third juror, that we're allowed to look at the totality of the circumstances and we end up with a black defendant and three black jurors who did get bumped off the panel. And that would be our argument with respect to ñ There was an African-American left on the jury. I believe there was. I mean, I did not try the case. It is my understanding in discussing the case that there was one other black panel member who was on the panel. That's correct. And the three others who did get bumped off. Multiple issues. If I could jump ahead, unless the Court had something, I'd like to address the restitution issue also, which was the ñ I believe the sixth argument in our brief. And whether a restitution order of $767,500, whether that, on account that the client was specifically acquitted on, could be included in the restitution amount. There was restitution in the amount of approximately $1.3 million, a substantial portion which came on an account of which the defendant was found not guilty. The only thing that I would like to point out in that argument is that the cases that the government has relied on do not involve acquittals. They involve cases where either there was a plea bargain and those cases were dropped out, or there was no verdict. So I think we have a distinction on this case, where the defendant was specifically found not guilty, count four in the Court when it entered a restitution order, included the amount that was involved in that particular incident. And so I would request the Court to find that there should be no restitution and perhaps distinguish between the cases that have been cited by the government, which was the Barack Davis case and a case called Lawrence. Because as far as reading those and reading other cases, I did not see any cases where someone was found not guilty on a particular charge and then thereafter ordered to pay restitution on that count. We would also argue it is contained, I'd like to highlight contained in our fourth argument, where the defendant was convicted for money laundering. The money being involved came from a wire fraud of which she was acquitted. So?  My theory is that she got this money through an illegal wire fraud and was aware of this whole situation. And if that's the case, if that $20,000 was, in other words, if she was supposed to be found guilty for that and then later received a check, it's our contention that those are really wrapped into the same, that that was the government's theory. There are many reasons why a jury might acquit. You might simply not find one of the elements of the crime. It may not be satisfied beyond a reasonable doubt. It's hardly a finding that she wasn't involved. Well, that might be. But I think the government's theory was that she was involved, that she was intricately involved in all of this. That was their presentation. But the jury's finding her not guilty of that specific crime does not mean she wasn't involved. Well, she may have been involved in some way, but I don't think there was sufficient evidence to show that she was knowingly involved in that money laundering other than the mere fact that she received a check on an account that she was found not guilty on. I mean, it's the government's burden, and I think that the jury may have just been confused in that regard. And we would like the court to take a close look at that count as to whether that money laundering count should remain in the case. If I could reserve my time for rebuttal, unless the court has any questions on any of the other specific issues. Okay. Thank you. Good morning, Your Honors. Stephanie McYonakura McCaffrey for the United States. The issues on appeal involve a Batson claim, a suppression motion, sufficiency of evidence, and it sounds like restitution as opposed to the sentencing, the actual sentence. I apologize. I have a cold, Your Honors. There was no Batson error in this case. The burden of persuasion was with the defendant, and all of the defendant's arguments go to the prima facie case, showing that the preemptory challenges were based on race. But the government offered, as the court found, very strong, independent, race-neutral reasons for each of the jurors. And it should be noted that the defendant has not countered at trial or here with facts on the record that would dispute the government's proffered reasons for each of the jurors. With respect to, and just to answer, reply to Judge Hawkins to your comparative analysis, the comparative analysis in this case, which the government did conduct in preparation for this hearing, is overwhelming. With respect to juror gains, it was not only the lack of sophistication and the fact that she stated that she wanted to be a judge. That actually goes to whether or not the government felt she could deliberate with the other jurors. But she specifically stated that she had religious and moral concerns sitting in judgment of another. When specifically probed about that, she did state that she thought that she could set that aside so she wasn't dismissed for cause. But that was another reason offered by the government, and juror Shuler was dismissed for cause for that same reason. Her views were more strong. She said that she actually would find it hard to set her views aside. With respect to juror Winslow, he stated that his parents had separated, so each of his parents had had negative experiences with the mortgage lending industry. He felt that they had been railroaded into staying in adjustable rate loans and that that would skew his views. Again, he said that he thought that he could put that aside so he wasn't dismissed for cause. But the reasons for the dismissal of juror Winslow are analogous to the dismissal of juror Ahn, A-H-N, who was dismissed for cause because he said that his parents had a negative experience in the mortgage lending, in obtaining a mortgage for their house when they had moved to the country. And finally, with juror Laudermilk, not only did juror Laudermilk's demeanor appear to be angry or, as the Court noted, arrogant, and the fact that he worked in the subprime lending industry, regardless if he had to have that drug out of him, it still remains a fact that he had a real estate license and he worked in the subprime lending industry. And jurors Cunningham, who had a real estate license, and juror Nito, who also had a real estate license and worked in the lending industry, were also struck. So the government believes that a comparative analysis supports its ---- Thank you. Thank you. With respect to ---- Anything else you heard this morning that you think you need to address? No, Your Honor. Okay. Thank you. No, don't go away. I'm sorry. I'd like to ---- Could you talk about the restitution argument? Yes, Your Honor. With respect to restitution, the defendant notes that the defendant was acquitted of the underlying wire fraud associated with the Isle Court property. Now, that is correct, but the analysis for sentencing purposes and specifically for restitution is by a preponderance of the evidence. And although Brock Davis and Lawrence don't cover acquittals, here the defendant was convicted of a conspiracy that specifically included over acts involving the Isle Court transaction. The district judge did misspeak about that, right? As stated in the government's footnote, she said acquitted, but a reading of the record would seem to show that she meant convicted. And that he was also convicted of the money laundering count associated with Isle Court. So given that, that is the reason why the government cited the Brock Davis case, because since she was convicted of the conspiracy and the government showed that she was involved in that Isle Court transaction by a preponderance of the evidence, the Isle Court property loss should be included in the restitution amount. Thank you. Thank you. Thank you. Just to respond to the last point, it is true that when you have this quote-unquote scheme that you can kind of override, but none of those cases address the specific point that we've raised on the acquittal. Right. Even those cases with scheme were either ones where there was a plea bargain and the count got set aside or there was a hung jury. So I think we have a little bit of a distinction here, and I think... But they did find her guilty of the conspiracy. They did. That's true. But it obviously didn't involve the Isle Court property where there was an acquittal, so I think even the Brock Davis and Lawrence I believed involved schemes, and this involves a scheme, but I don't think... How can you say it didn't involve the... I mean, she may have been acquitted of a specific charge as to that transaction, but the conspiracy covers multiple transactions, and an individual can be guilty of all the things, responsible for all the things that the conspiracy does, even though they may not be specifically involved in a particular one of the crimes, and even though they may not be convicted of any specific crime that the conspiracy involved in. So I don't understand how... No, you're absolutely correct. In fact, the question is are we going to take an acquitted charge and stick somebody with a restitution order for $727,000... Why not? ...which the court found them not, and which the jury found them not guilty of? She's not guilty of that specific crime involving that charge, but if she's in a conspiracy that covers that transaction, I don't see how we'll... I mean, at a certain point, we have to limit how far we're going to stick somebody with some kind of a restitution order that they obviously weren't involved with, other than maybe the restitution could be modified to make it the $20,000 that she got out of the money that was allegedly laundered out of that $727,000. But as you argue, and you've attacked it, but the jury did, in fact, find her guilty on Count 5, which involved the Isle Court wire fraud. And you were arguing, well, that should fall because of the acquittal on Count 4, right? Well, that's right. If the court was not to find her guilty, if the court leaves the conviction on Count 5, it would seem that... So the jury found, I mean, you're arguing they're inconsistent, but to the extent you lose on that, then if they found her guilty of the conspiracy where the Isle Court transaction was part of the proof, I mean, we're left with the notion that the jury did acquit her specifically of wire fraud on Count 4, but they were willing to find her guilty on at least two counts where Isle Court was part of the proof. Well, and that's true, but she was all the restitution on those other two counts, she's the restitution was ordered on those. So I guess the question is whether... No, I understand the... I mean, the Court's correct in its analysis, I guess. You know, there were no cases that I saw that dealt with this scheme thing where there was a, where it was bundled in with an acquittal, that's all. Okay. So there might be some new ground there. All right. Thank you. Thank you. The case is argued with pencil. All rise. Thank you. This court is adjourned.
judges: Kozinski, Hawkins, Fisher